**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JANE DOE, *et al.*,

        Plaintiffs,

v.

LINCOLN CONSOLIDATED SCHOOLS,
*et al.*,

        Defendants.

_____/

Case No. 2:23-cv-11236

Hon. Brandy R. McMillion
United States District Judge

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 62)**
**AND DENYING IN FULL PLAINTIFFS' MOTION FOR SUMMARY**
**JUDGMENT (ECF NO. 63)**

Plaintiff Jane Doe, by and through her mother Mary Doe, as next of friend for minor Jane Doe (together, "Plaintiffs"), bring this civil action against the Lincoln Consolidated Schools ("LCS" or "District"), Superintendent Robert Jansen ("Superintendent Jansen"), Principal Shane Malmquist ("Principal Malmquist"), Human Resource Director Adam Blaylock ("HR Director Blaylock"), Assistant Principals Carrie Melcher ("Assistant Principal Melcher") and Regina Winborn ("Assistant Principal Winborn"), and Teacher Mark Lowe ("Mr. Lowe") (collectively, "Defendants").[1] *See generally* ECF No. 23.  Plaintiffs allege violations

---

[1] Superintendent Jansen, Principal Malmquist, HR Director Blaylock, Assistant Principals Melcher and Winborn, and Mr. Lowe shall collectively be referred to as the "Individual Defendants."

1

under 20 U.S.C. § 1681 *et seq.* ("Title IX"), the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), and Article I, Section 26 of the Michigan Constitution for failure to investigate sexual assault, prevent sexual harassment, and retaliation. *Id.*

Before the Court are Plaintiffs' and Defendants' cross-motions for summary judgment. *See* ECF Nos. 62, 63. Defendants move for summary judgment on all claims – Title IX (Count I), PWDCRA (Count II), and Article I, § 26 of the Michigan Constitution (Count III). *See generally* ECF No. 62. Plaintiffs cross-move for summary judgment on the Title IX claim (Count 1) and the Michigan Constitution claim (Count III). *See* ECF No. 63. The Motions have been adequately briefed, so the Court finds oral argument unnecessary. *See* ECF Nos. 64, 65, 66, 67; E.D. Mich. LR 7.1(f). For the reasons stated below, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART,** and Plaintiffs' Motion is **DENIED IN FULL**.

## I.

Plaintiff Jane Doe is a minor and special needs student at Lincoln High School ("LHS") with a medical disability diagnosis of Cognitive Disorder. ECF No. 23, PageID.121. Jane Doe received special education services pursuant to an Individualized Education Program ("IEP"). ECF No. 63-5, PageID.819-820. LHS is a public high school operated by Defendant Lincoln Consolidated Schools. *Id.* at PageID.120. At all relevant times, Defendant Lincoln Consolidated Schools

received federal funding and was therefore subject to the requirements of Title IX. *See* 20 U.S.C. § 1681(a); ECF No. 23, PageID.122.

During the summer of 2021, Jane Doe alleges that another LHS student sexually assaulted her. ECF No. 23, PageID121. She was 14 years old at the time of the alleged assault. *Id.* The alleged incident occurred off campus and outside of LHS's academic year. *Id.* Jane Doe's parents, John and Mary Doe, and LCS officials did not learn of the alleged assault until sometime in or around November 2021. ECF No. 63-12, PageID.854-855. John Doe, who was employed by the District, first reported the alleged assault to Superintendent Jansen and HR Director Blaylock in November 2021.[2] ECF No. 63-3, PageID.803; ECF No. 63-4, PageID.810. According to the record, HR Director Blaylock informed Jane Doe's father that an investigation might be required, but indicated that he could not personally conduct the investigation due to his close personal relationship with John Doe. ECF No. 63-2, Page.ID.711.

After reviewing applicable Title IX regulations, Defendant Blaylock concluded that the off-campus nature of the alleged incident did not require the District to initiate a formal Title IX investigation and declined to initiate one. ECF No. 62-3, PageID.714. Principal Malmquist testified in his deposition that Jane Doe

---

[2] The record contains other accounts that suggest that John Doe also reported the alleged assault and on-campus harassment by Jane Doe's assailant to Principal Malmquist in November 2021. ECF No. 65-4, PageID.937; ECF No. 65-8, PageID.963-964.

and her assailant were separated from the class they shared during the Fall semester in response to John Doe's reports and were subsequently placed in the same Fifth Hour class together during the Spring due to a purported administrative error.  ECF No. 65-8, PageID.963; ECF No. 65-11, PageID.978.

During that Spring semester, on March 22, 2022, Jane Doe submitted a "Student Statement Form" indicating that the alleged assailant was present in her classroom and was "looking" and "winking" at her during class.  ECF No. 63-6, PageID.828.  The Student Statement Form did not describe the alleged 2021 sexual assault.  It was on or around April 6, 2022, that administrators corrected the error by adjusting Jane Doe's schedule and placing her in a different class, approximately 2 weeks (6 school days) after she submitted her Student Statement Form.[3]  ECF No. 62-5, PageID.741.

## II.

When a party moves for summary judgment, it must show there's no genuine dispute on any material fact and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is a genuine dispute of material fact when there are "disputes over facts that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must

---

[3] LHS was not in session from March 27, 2022, through March 31, 2022.  ECF No. 62-6, PageID.743.

view the facts in the light most favorable to the nonmoving party only when there exists "a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). And "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. *Scott*, 550 U.S. at 380; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Scott*, 550 U.S. at 380 (quoting *Matsushita*, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," *Scott*, 550 U.S. at 380 (quoting *Anderson*, 477 U.S. at 247-48). The court does not weigh the evidence to determine the truth of the matter but must decide if the evidence produced creates a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

When evaluating cross-motions for summary judgment, the Court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). "The fact that

both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Id.* (citations omitted).

## III.

Plaintiffs bring this action alleging that LCS and its officials, the Individual Defendants, failed to adequately respond to reports that Jane Doe, a minor student, was sexually assaulted by a classmate and subsequently subjected to ongoing sex-based harassment within the school environment. *See generally* ECF No. 1. According to Plaintiffs, Defendants' collective failure to investigate the alleged assault, prevent continued harassment, and implement appropriate remedial measures deprived Jane Doe of access to educational opportunities and caused her significant emotional and academic harm. *Id.* at PageID.119, 121-124. Plaintiffs assert three causes of action arising from this alleged misconduct: a Title IX claim based on student-on-student sexual harassment; a disability discrimination claim under PWDCRA; and a sex-discrimination claim under Article I, § 26 of the Michigan Constitution. *Id.* at PageID.119.

## A.     TITLE IX CLAIM AGAINST LCS[4]

LCS moves for summary judgment on the Plaintiffs' Title IX claim, arguing that there was no actionable or pervasive sexual harassment, nor deliberate indifference on LCS's part.  *See* ECF No. 62, PageID.675; *see also* ECF No. 64, PageID.870-877.  The District maintains it had no duty to investigate Jane Doe's allegations concerning the sexual assault because it took place off campus, during summer vacation.  ECF No. 62, PageID.677.  According to LCS, the only conduct occurring within its purview under Title IX amounted to a single incident consisting of "obscene sexual gestures," which were not sufficiently pervasive to create an actionable Title IX claim.  *Id.*  LCS also asserts that it responded reasonably to the situation by separating Jane Doe and her alleged assailant after Jane Doe submitted a Student Statement Form documenting the alleged harassment in March of 2022.  *Id.* at PageID.679.

Plaintiffs also move for summary judgment on their Title IX claim, providing multiple bases to dispute the District's characterization of the record in their

---

[4] Defendants open their Motion (ECF No.62, PageID.674) by arguing that the Title IX claim must be dismissed as to the Individual Defendants because liability under Title IX may lie only against the federal funding recipient, not individual school officials.  *See Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999).  Plaintiffs respond that dismissal is unnecessary because Count I does not assert a Title IX claim against the Individual Defendants, only LCS.  ECF No. 65, PageID.899.  Although the Plaintiff's request for relief generally refers to "Defendants," the FAC, read as a whole, makes clear that the Title IX claim is asserted only against LCS.  As such, there is no Title IX action against the Individual Defendants for the Court to dismiss, and it will proceed with its analysis of the Title IX claim against LCS.

Response and Cross-Motion. *See generally*, ECF No. 65, PageID.899-907; *see also* ECF No. 63, PageID.776-783.   Plaintiffs argue that the harassment was both sufficiently severe and pervasive, and that LCS violated Title IX when it received notice of Jane Doe's sexual assault and the subsequent gender- and sex-based harassment and acted with deliberate indifference toward Plaintiff. *Id.*   According to Plaintiff, the District's treatment of Jane Doe constituted a deprivation of access to educational opportunities, warranting liability for the District under Title IX. *Id.*

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." *See* 20 U.S.C. § 1681(a).  Title IX liability for student-on-student sexual harassment attaches when a plaintiff can demonstrate: "(1) 'actual knowledge' of sexual harassment (2) that is 'so severe, pervasive and objectively offensive' that it deprives the student of 'educational opportunities or benefits' and (3) [the defendant] act[ed] with deliberate indifference to the problem." *Kesterson v. Kent State Univ.*, 967 F.3d 519, 527 (6th Cir. 2020).  Because Defendants' arguments regarding both the severity of the alleged harassment and the reasonableness of their response depend heavily on when the District first obtained notice of Jane Doe's allegations, the Court begins its analysis with the actual knowledge element.

### 1.    *Actual Knowledge*

The parties do not dispute that LCS ultimately received notice of Jane Doe's allegations.  The dispute instead concerns when school officials received notice of the alleged harassment and the scope of information known to them at the time, both of which bear directly on whether the District's response could constitute deliberate indifference.

The implied damages remedy for student-on-student harassment under Title IX is only available if Plaintiffs can prove that they gave actual notice of the peer-on-peer harassment to an "appropriate person" who, at a minimum, has authority to address the alleged discrimination and institute corrective action on behalf of the federal funding recipient.  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 259 (6th Cir. 2000).

The parties present sharply different accounts regarding when the District first obtained actual knowledge.  Defendants contend that they did not receive notice of any alleged harassment until Jane Doe submitted a Student Statement Form in March 2022, which provided a seemingly vague description of the allegedly harassing conduct.  ECF No. 64, PageID.875-876.  Jane Doe's statement specifically noted that the alleged harasser was "looking" and "winking" at her, that the behavior made her "uncomfortable, nervous, and scared," and that the behavior continued despite her asking him to stop multiple times.  ECF No 63-3, PageID.828.  Defendants claim

9

that this report was the first time the District received information suggesting that Jane Doe was experiencing harassment within the school environment.  ECF No. 62, PageID.673; ECF No.64, PageID.866, 872, 874.

Plaintiffs, however, point to record evidence suggesting that multiple district officials, including Superintendent Jansen, HR Director Blaylock, and Principal Malmquist, were informed of both the alleged off-campus assault and subsequent in-school harassment months earlier, during the Fall of 2021.  ECF No. 65-4, PageID.937; ECF No. 65-8, PageID.963-964.  For example, deposition testimony from Principal Shane Malmquist indicates that he communicated information about the reports to Assistant Principals Melcher and Winborn and that the Title IX coordinator supposedly initiated a formal investigation in the Fall of 2021.  ECF No. 65-8, PageID.963.  Additional testimony suggests that Jane Doe's parents were also told that a formal investigation would occur following the Fall 2021 report, although no investigation ultimately took place.  ECF No. 65-4, PageID.937, 939; ECF No. 65-9, PageID.970.  If true, these facts potentially support Plaintiffs' version of events, in which LHS officials had notice of harassment within their Title IX purview before the March 22 report.

The parties also present conflicting explanations regarding the District's handling of the 2021 and 2022 reports.  Some testimony by HR Director Blaylock suggests that the District declined to investigate the November 2021 allegations

because no formal Title IX complaint was filed.  ECF No. 65-7, PageID.960. Elsewhere, Defendants rely on the fact that the only report they received from Jane Doe herself, and not her parents, came from the March 2022 Statement Form to suggest their Title IX responsibilities are not triggered until the actual victim makes a report.  ECF No. 62, PageID.678; ECF No. 64, PageID.872.  Other deposition testimony by Blaylock suggests that the conduct described in the March 2022 Student Statement Form was not sufficiently serious to warrant further action.  ECF No. 65-7 at PageID.958.  Yet, Blaylock could not provide an answer when prodded about how the harassment was severe enough to remove Jane Doe from the classroom, but not severe enough to warrant an investigation.  *Id.*  The District's Training Protocols at the time indicate that "any person can make a sexual harassment report. . .verbally, in writing, or electronically at any time to any school employee," and further, that the onus was on the Title IX coordinator "upon receipt of report" to contact the complainant or alleged victim to discuss supportive measures and "explain the process for filing [a] Formal Complaint."  ECF No. 65-13, PageID.982.  The Defendants' conflicting accounts, shifting justifications, and deviations from their established procedures raise more questions than they answer about what information the District possessed, when it possessed it, and how it interpreted it at the time.

11

Given that both parties' request summary judgment on Plaintiffs' Title IX claim based on factual narratives that fiercely conflict with each other, the competing accounts in the record create a genuine dispute of material fact regarding the timing and scope of the District's knowledge of the alleged harassment. The adequacy of a school's response must be evaluated in light of the circumstances known to the institution at the time. *Davis v. Monroe Cty. Bd. Of Educ.*, 526 U.S. 629, 648 (1999). Thus, resolution of this notice dispute bears directly on the remaining elements of Jane Doe's peer-on-peer harassment claim. Accordingly, the question of when LCS obtained actual knowledge of the alleged harassment cannot be resolved as a matter of law.

### 2.  *Severe, Pervasive, and Objectively Offensive*

LCS argues that the conduct alleged by Plaintiffs does not amount to actionable, pervasive harassment under Title IX.  ECF No. 64, PageID.868. According to LCS, the only conduct occurring within the school's control consisted of non-actionable, isolated obscene sexual gestures, such as "looking and winking" at Jane Doe. *Id.* at PageID.871. LCS also emphasizes that the students were only in the same class for six days before Jane Doe was moved to another class. *Id.* at PageID.875. Plaintiffs dispute that characterization of the record. Plaintiffs, on the other hand, contend that Jane Doe was subjected to repeated incidents of harassment at the hands of her alleged rapist. ECF No. 66, PageID.989. Plaintiffs further assert

that the harassment had significant consequences for Jane Doe's well-being and educational experience and performance, and ultimately led her to engage in self-harm, experience suicidal ideations, and withdraw from in-person learning. ECF No. 63, PageID.772.

Under Sixth Circuit precedent, harassment is "pervasive" when it involves multiple incidents of misconduct rather than a single isolated event. *Doe v. Univ. of Kentucky*, 959 F.3d 246, 250 (6th Cir. 2020). Whether conduct rises to the level of actionable harassment depends on the totality of the circumstances, including the frequency and severity of the behavior and its impact on the victim's educational environment. *Kollaritsch v. Michigan State Univ. Bd. of Trs.*, 944 F.3d 613, 620–21 (6th Cir. 2019).

Here, the record presents contrary accounts regarding the scope of harassment that Jane Doe experienced. Defendants would have the Court find that the alleged harassment amounted to infrequent, non-actionable teasing that is common in the classroom environment. ECF No. 62, PageID.677. While Plaintiffs would have the Court find that Jane Doe's classmate repeatedly directed sexually suggestive gestures toward her in class, mocked her publicly regarding the alleged assault, accused her of lying, and otherwise engaged in behavior that Plaintiffs characterize as humiliating and threatening. ECF No. 65, PageID.900-901. Plaintiffs also present evidence that the harassment affected Jane Doe's ability to participate in school

activities and contributed to significant emotional distress that caused Jane Doe to engage in self-harm and experience suicidal ideations. *Id.* at PageID.900.

At this stage of the proceedings, the Court cannot conclude as a matter of law that the alleged conduct was merely isolated teasing or juvenile behavior, or more severe and pervasive, actionable harassment. A reasonable jury could determine that accusations related to a prior sexual assault, in addition to repeated sexual gestures, public ridicule, and other unwanted interactions occurring within the school environment, constitute harassment that is sufficiently severe and pervasive to interfere with a student's access to educational opportunities. Conversely, a reasonable jury that credited the District's version of events might determine that Jane Doe's allegations did not amount to actionable peer-on-peer harassment. As the Court previously noted, the scope of the District's knowledge bears directly on its analysis of whether the alleged harassment was severe, pervasive, and objectively offensive.

Once more, the parties' dispute centers around when LCS first obtained notice of the alleged harassment and what information was conveyed to school officials at that time. If the District's account is credited, school officials did not receive notice until March 2022, when Jane Doe submitted her Student Statement Form describing conduct by her alleged assailant that was limited to "looking" and "winking" at her in class. If, however, Plaintiffs' version of events is credited, school officials were

14

informed months earlier that Jane Doe was experiencing repeated harassment connected to the alleged assault.  In deposition testimony, Jane Doe and her parents specifically recounted multiple incidents of unwelcome harassment by her classmate that included winking, intimidating looks, making a lewd sexual gesture by doing a tonguing motion between spread fingers, licking his lips at Jane Doe, publicly mocking her, broadcasting the assault by deliberately making loud and vulgar comments for others to hear, telling others Jane Doe was a "liar" who "made stuff up," staring and laughing at Jane Doe, and blowing kisses toward her in class.  ECF No. 65-2, PageID.920; ECF No. 65-4, PageID.940-941.

Thus, resolution of the severity-and-pervasiveness inquiry is not possible without a factual determination as to the conduct known to school officials at the time they received notice of the harassment.  Because the parties sharply dispute both the timing and the scope of the District's knowledge, those factual disputes affect how the alleged harassment is characterized under Title IX, and further preclude resolution of this element as a matter of law.  Accordingly, the Court finds that a genuine dispute of material fact also exists regarding whether Jane Doe was subjected to actionable harassment under Title IX.

### 3.    *Deliberate Indifference*

Defendants repeatedly suggest that the District's obligations under Title IX were diminished as a matter of law because the alleged sexual assault occurred off

campus and because law enforcement declined to pursue criminal charges.  ECF No. 62, PageID.672-673, 677, 679.  The Court declines to adopt that framing of the statute.

The fact that an alleged assault occurred outside the school environment, or that law enforcement declined to bring charges, does not eliminate a school's independent obligations under Title IX.  The statute does not require a school to determine whether a sexual assault occurred before it has a duty to investigate subsequent on-campus student-on-student harassment.  Rather, once school officials receive notice that a student may be experiencing sex-based harassment affecting her access to educational opportunities, the institution must respond in a manner that is not clearly unreasonable in light of the known circumstances.  *Davis*, 526 U.S. at 648.

Defendants also emphasize that Jane Doe remained in contact with the alleged assailant following the alleged assault.  ECF No. 62, PageID.771.  The aforementioned facts, however, do not affect the Court's Title IX inquiry. Particularly where the student involved is a minor, the dynamics surrounding interpersonal relationships and the reporting of sexual misconduct are often complex.  The relevant inquiry for purposes of Title IX is not whether the Court finds those dynamics persuasive, but again, whether LCS, once on notice of conduct

16

occurring within its educational environment, responded in a manner that could be deemed clearly unreasonable under the circumstances. *Davis*, 526 U.S. at 648.

Here, Plaintiffs do not contend that the District was responsible for the alleged off-campus assault itself. Instead, they argue that the assault formed the context for subsequent conduct occurring within the school environment, conduct that allegedly involved repeated offensive, unwanted gestures, intimidation, and humiliation directed toward Jane Doe in the classroom. If a jury credits Plaintiffs' version of events, the alleged assault provides context for why such conduct could reasonably be perceived as severe and harmful within the educational setting, particularly given Jane Doe's age and documented cognitive impairments. *See Foster v. Bd. of Regents of Univ. of Michigan*, 982 F.3d 960, 970 (6th Cir. 2020) ("Title IX deliberate indifference claims have special resonance when the school 'exercises substantial control over both the harasser and the context in which the known harassment occurs[.]'") (quoting *Davis*, 526 U.S. at 645).

Accordingly, Defendants' reliance on the off-campus nature of the alleged assault, the absence of criminal charges, and Jane Doe's continued contact with the alleged assailant as their initial justification for declining to initiate a formal investigation does not resolve the Title IX analysis as a matter of law. Those details, instead, underscore the core factual disputes surrounding the timing and scope of the District's knowledge and the adequacy of its response.

Courts evaluate deliberate indifference by examining the nature and duration of the harassment, as well as the school's overall response. *Gordon v. Traverse City Area Pub. Schs.*, 686 F. App'x 315, 325 (6th Cir. 2017). Deliberate indifference is a "high bar" and does not require schools to eliminate all harassment or impose particular disciplinary measures. *Stiles ex rel. D.S. v. Grainger Cnty.*, 819 F.3d 834, 848 (6th Cir. 2016). The Court's inquiry is context-specific and requires a determination as to whether the school's actions amounted to an official decision not to remedy the violation. *Foster*, 982 F.3d at 968.

LCS argues that its response was reasonable because it separated the students after learning of the alleged sexual assault, and again after Jane Doe reported the alleged harassment in March 2022. ECF No. 67, PageID.1001-1002. According to the District, this action addressed the situation and prevented further interaction between the students. *Id.* at PageID.1002. Plaintiffs argue that the District's response was inadequate because school officials declined to investigate Jane Doe's allegations of harassment that predated the March report, and instead concluded, without further inquiry, that the conduct described in the Fall 2021 reports and the March 2022 Student Statement Form was not actionable harassment. ECF No. 62-4, PageID.746. As previously mentioned, Plaintiffs also point to evidence suggesting that school administrators indicated an investigation would occur, but ultimately took no investigative steps. ECF No. 65-4, PageID.937, 939; ECF No.

18

65-9, PageID.970. Plaintiffs further contend that the District's decision not to investigate departed from the District's own Title IX protocols and training procedures. ECF No. 65, PageID.905. As provided by the District's Title IX Training Resources, once school officials receive notice of potential sexual harassment, the District's procedures require administrators to engage with the reporting student, discuss available supportive measures, and assess whether a formal complaint should be initiated before determining the appropriate course of action. ECF No. 65-13, PageID.982.

Plaintiffs argue that LCS ignored these threshold procedures, and that LCS administrators should not have concluded that the conduct described was not actionable harassment without first conducting a meaningful inquiry into the allegations and the broader circumstances surrounding the reported conduct. ECF No. 65, PageID.904. Although Title IX does not require schools to follow any particular investigative procedure, a school's decision not to investigate allegations of harassment may still be relevant to whether its overall response was clearly unreasonable. *See Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 262 (6th Cir. 2000) (holding that a jury could find deliberate indifference where school officials repeatedly failed to investigate or meaningfully respond to complaints of harassment).

19

Here too, a jury could view such a departure from established procedures as evidence that the District's response was clearly unreasonable under the circumstances, or agree that the District's response was sufficient to address Plaintiffs' allegations. The record, whether viewed in the light most favorable to either party, reveals competing interpretations of the District's response that are best fit for resolution at trial. More specifically, reasonable jurors might conclude that separating the students after the March report was a reasonable measure designed to protect Jane Doe's access to her education. But a jury could also conclude that the District's decision not to investigate the allegations, despite receiving reports of repeated harassment much earlier in the school year or placing her back in a classroom with her alleged assailant, left Jane Doe vulnerable to continued humiliation and failed to address the underlying conduct meaningfully. As discussed in the Court's analysis of the first and second prongs, the adequacy of the District's response overwhelmingly depends on disputed facts regarding the extent of the District's knowledge and the circumstances surrounding its decision not to investigate; therefore, the Court cannot resolve the deliberate-indifference question as a matter of law.

Accordingly, the record contains genuine disputes of material fact regarding the District's knowledge of the alleged harassment, the scope of that conduct, and

the adequacy of the District's response, precluding summary judgment for either party on Plaintiffs' Title IX claim against Lincoln Consolidated Schools.

**B.    PWDCRA**

The First Amended Complaint advances three theories of liability under the Persons with Disabilities Civil Rights Act ("PWDCRA").  Plaintiffs allege that LCS and the Individual Defendants discriminated against Jane Doe on the basis of her disability by: (1) failing to investigate the alleged sexual assault by another student; (2) failing to address the effects of the alleged assault, prevent its recurrence, or conduct an investigation into the resulting harassment; and (3) removing Jane Doe from her classroom in violation of the conditions set forth in her IEP.  ECF No. 23, PageID.125.  Defendants now move for summary judgment on Plaintiffs' disability discrimination claim under the PWDCRA, on the grounds that the claim is preempted by the Michigan Mandatory Special Education Act ("MMSEA") and that the Plaintiffs failed to prove that Jane Doe is disabled as defined by the PWDCRA or that she was subjected to disability-based discrimination.

*1.    Preemption by MMSEA*

Defendants argued that Plaintiffs' PWDCRA claim is preempted by MMSEA, because the latter statute governs claims that arise under the PWDCRA, but "relate to a student's education."  ECF No. 62, PageID.680.  Michigan courts have recognized that the PWDCRA functions as a general civil rights statute and may

21

operate alongside other education-related statutory schemes unless a more specific statute governs the particular claim asserted. *See Woolcott v State Bd. of Educ.*, 134 Mich. App. 555, 563 (1984) ("Where there are two acts, one of which is general, and which, if standing alone, would include the same matter and thus, conflict with the special act, the special act must be viewed as an exception to the general."). "[T]he MMSEA and its related regulations govern the 'preparation, content, and appeal of IEPs.'" *Zdrowski v. Rieck*, 119 F. Supp. 3d 643, 670 (E.D. Mich. 2015) (quoting *Miller ex rel. Miller v. Lord,* 262 Mich. App. 640, 645 (2004)). The "comprehensive scheme of MMSEA preempts claims arising under the PWDCRA if the claims relate to a student's education, because the latter statute addresses disabilities more generally than does the MMSEA, which targets specifically educational disabilities." *Griffin v. Sanders*, No. 4:13-cv-12289, 2013 WL 3788826, at *10 (E.D. Mich. July 19, 2013). However, where a plaintiff asserts a theory of disability discrimination that does not relate to the student's IEP, the claim may proceed under the PWDCRA. *Id.*

The third theory of liability undoubtedly relates to the implementation of Jane Doe's IEP. Plaintiffs contended that Defendants violated Jane Doe's IEP when they removed her from the classroom and placed her in a different learning environment. ECF No. 62-7, PageID.747, 751. Therefore, to the extent Plaintiffs' PWDCRA claim is premised on Defendants' alleged violation of Jane Doe's IEP, that portion of the

22

claim is preempted by the MMSEA and cannot proceed under the PWDCRA. *Griffin*, 2013 WL 3788826. However, Defendants failed to argue any basis for preemption of the Plaintiffs' failure-to-investigate and failure-to-address theories of liability in their Motion. Moreover, the Court is satisfied that the remaining two theories fall outside of MMSEA's scope. Instead, they concern the District's response to Jane Doe's reports of harassment and their decision not to investigate those allegations, neither of which has any connection to the content of Jane Doe's IEP. Given their absence of relation to the IEP, the PWDCRA is the appropriate statute to govern the Plaintiffs' disability discrimination claims based on the District's alleged failure to address the effects of the alleged assault, prevent its recurrence, or conduct an investigation into the resulting harassment; and the District's removal of Jane Doe from her classroom in violation of the conditions set forth in her IEP.

Consequently, the Court will turn to an analysis of the merits of Plaintiffs' disability discrimination claim.

### 2. *Disability Discrimination*

The PWDCRA prohibits discrimination against individuals on the basis of "physical or mental disabilities that substantially limit a major life activity." *Peden v. City of Detroit*, 680 N.W.2d 857, 864 (Mich.2004). To establish a claim under the PWDCRA, "a plaintiff must demonstrate (i) that she is disabled as defined by the

act; (ii) that she is qualified for an educational opportunity that she seeks despite her disability; and (iii) that, in spite of these qualifications, she has not been given an equal opportunity to secure similar education as other persons." *Griffin*, 2013 WL 3788826, at *10. *Griffin* further provides that a successful disability discrimination claim requires proof that a plaintiff has "either been subjected to discrimination or excluded from a program or denied benefits solely by reason of her disability." *Id.* (internal quotes omitted).

Defendants argue that summary judgment on the Plaintiffs' disability discrimination claim is proper given that there is no evidence that Jane Doe is disabled under the PWDCRA, nor evidence that the Defendants discriminated against her because she is disabled.[5] ECF No. 62, PageID.681-682. The Plaintiffs do not offer any argument in response as to the merits of their disability claim. Without more from the Plaintiff as to the specific facts supporting their claim, the Court finds that the record does not provide sufficient evidence that Jane Doe was not given an equal opportunity to secure a similar education to other students *because of* her disability. Accordingly, the Court grants summary judgment for LCS and the Individual Defendants as to the Plaintiffs' PWDCRA claim.

---

[5] The Defendants do not offer any authority to support their assertion that Cognitive Disorder does not qualify as a disability as defined under the PWDCRA; however, the Court need not reach that issue because there is no evidence to suggest that Jane Doe was discriminated against because of her disability.

## C.   ARTICLE I, § 26 OF THE MICHIGAN CONSTITUTION[6]

Plaintiffs also assert a claim under Article I, § 26 of the Michigan Constitution, which provides that:

> (1) [t]he University of Michigan, Michigan State University, Wayne State University, and any other public college or university, community college, or school district shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education or public contracting.
>
> . . .
>
> (6) The remedies available for violations of this section shall be the same, regardless of the injured party's race, sex, color, ethnicity, or national origin, as are otherwise available for violations of Michigan anti-discrimination law.

MICH. CONST. art. I, § 26.  Plaintiffs argue that Defendants' failure to respond to a female student's harassment complaint amounted to a violation of § 26.  Plaintiffs specifically assert that the Defendants treated Jane Doe differently from her male abuser, thereby discriminating against her based on her sex.  ECF No. 63, PageID.784.  Plaintiffs also claim that the Defendants' ongoing inaction despite having notice of sex-based harassment amounted to constitutionally prohibited discrimination. *Id.*

---

[6] The Court also agrees with Defendants that the Individual Defendants cannot be liable under Article I § 26 of the Michigan Constitution because the provision applies to Michigan state entities, not individuals.

As an initial matter, Plaintiffs' attempts to identify a clear legal framework governing claims brought under this provision are unpersuasive. Although Plaintiffs assert that courts "look to" Michigan's anti-discrimination laws, specifically the Elliott-Larsen Civil Rights Act ("ELCRA"), to furnish remedies under § 26, they cite no judicial authority establishing that § 26 adopts the elements of any ELCRA claim or otherwise provides a standalone cause of action governed by ELCRA. Instead, Plaintiffs make assertions that would require the Court to extend the law in a way that the Court finds improper under the present circumstances. Plaintiff's specifically assert that "[i]n furnishing remedies under Article 1, § 26, the Courts look to the State anti-discrimination laws, in this case, the Elliot Larsen Civil Rights Act ("ELCRA"). . . .[w]hen addressing claims of sexual harassment, ELCRA is interpreted in light of federal standards established under Title IX." ECF No. 66, PageID.992-993. And "Courts interpret [Article I, § 26] as prohibiting state-sponsored unequal treatment on the basis of sex, including by failing to take action in response to complaints of sex-based discrimination or harassment." ECF No. 63, PageID.783.

In *Bauserman v. Unemployment Ins. Agency*, the Michigan Supreme Court recognized that "where the Legislature has provided an adequate mechanism to remedy a constitutional tort, [courts are] not required to duplicate the effort[,]" so long as "the legislative remedy is at least as protective of constitutional rights as a

26

judicially recognized remedy would be." 509 Mich. 673, 706 (2022). Article I, § 26(6) expressly provides that the remedies available for violations of this provision are the same as those provided under Michigan anti-discrimination law. It does not, however, say that the same elements or analytical framework apply to § 26 claims. Yet, Plaintiffs do not bring a claim under ELCRA, nor do they explain how § 26 provides an independent basis for relief distinct from existing statutory remedies.

Under these circumstances, the Court declines to recognize a standalone claim under § 26 that would duplicate remedies already available under Michigan law. Even assuming, arguendo, that ELCRA provides the appropriate analytical framework for a claim under § 26, Plaintiffs have not presented sufficient evidence that Defendants discriminated against Jane Doe on the basis of her sex that entitles them to summary judgment as a matter of law. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' claims under Article I, § 26.

**IV.**

Defendants noted in their response to the Plaintiffs' Motion that they believe that an "AI hallucination" was included in Plaintiffs' Article I, § 26 argument when they cited to "*Doe v. Univ. of Mich.*, No. 18-11914, 2019 WL 11793988, at *8 (E.D. Mich., Aug. 6, 2019)," to support their proposition that: "[c]ourts interpret [Article I, § 26] as prohibiting state-sponsored unequal treatment on the basis of sex, including by failing to take action in response to complaints of sex-based

27

discrimination or harassment." ECF No. 63, PageID.783. Plaintiff's response is that they did not use AI to complete their briefing; instead, the *Frankenstein* citation appears to result from multiple case citations inadvertently being combined during efforts to condense their brief. ECF No. 66, PageID.984.

The Court notes that it, too, could not find the case, *Doe v. Univ. of Michigan,* as originally cited, and the four cases Plaintiffs offer from which they believe the truncated citation formed do not appear to support their implication that Courts adopt the ELCRA or Title IX frameworks in analyzing claims under § 26, specifically. In fact, none of those cases contained any references to Article I, § 26 whatsoever. Further, the numbers and date following the original *Doe v. Univ. of Mich*. citation are missing from the citations for the four cases that Plaintiffs claim were part of the original string citation, which they should have included if it were a true "*Frankenstein*" citation. Based on this, the Court is not persuaded that Plaintiffs did not allow the inclusion of an AI hallucinated citation in their brief without checking that the citation supported the entirety of their proposition or verifying the validity of the citation at all.

Accordingly, the Court will order Plaintiffs' Counsel ("Delaporte Lynch, PLLC") to reimburse Defendants' Counsel for the reasonable costs and fees

28

associated with researching the hallucinated case and raising this issue with the Court in their brief.[7]

## V.

For these reasons, the Court concludes that genuine disputes of material fact exist as to each element of Plaintiffs' Title IX claim, particularly with respect to the timing and scope of the District's knowledge and the adequacy of its response. Additionally, only the Plaintiffs' IEP-based theory of liability under the PDWCRA is preempted by the MMSEA; but, the remaining theories fail because the Plaintiffs present no evidence that Defendants discriminated against Jane Doe on the basis of her disability.  Finally, the Court finds that Plaintiffs fail to articulate a viable doctrinal basis for a standalone Article 1, § 26 Michigan Constitution claim.

Further, the Court finds that the Plaintiffs' explanation for the non-existent cited authority cannot be substantiated and appears to be an "AI hallucination" that Plaintiffs failed to verify before including it in their brief.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 62) is **GRANTED IN PART** and **DENIED IN PART**.

---

[7] The Court orders that this cost is to be borne by Plaintiffs' counsel and not the Plaintiffs themselves.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (ECF No. 63) is **DENIED IN FULL**.  Plaintiffs' claims under the PWDCRA (Count II) and under Article 1, § 26 of the Michigan Constitution (Count III) are hereby **DISMISSED WITH PREJUDICE**.  Plaintiffs' Title IX claim is the sole remaining claim.

**IT IS FURTHER ORDERED** that the Individual Defendants are hereby **DISMISSED** from this action, as the remaining claim (Count I) is against Defendant LCS only.

**IT IS FURTHER ORDERED** that Delaporte Lynch, PLLC shall reimburse Defendants for the reasonable costs and fees associated with researching the hallucinated case included in its brief.

**IT IS SO ORDERED.**

Dated: March 23, 2026                           s/Brandy R. McMillion
                                                Hon. Brandy R. McMillion
                                                United States District Judge